CHARLES W. COLEHOUR

*v.*

THE STATE SAVINGS INSTITUTION.

1. USURY—*discounting paper.* It is not usury to buy a note, in the usual course of business, at a discount greater than the rate of interest allowed by law.

2. Where a debtor agrees with his creditor to give him a commission of $1500 if he will find a party who will advance the money then due and about to become due on his notes, secured by deed of trust, and thereby procure him a year's extension of time in the payment, and the legal holder of the notes transfers them by delivery to another party, who agrees with the holder to take them and give the desired extension for $1500, and money enough to make the interest on the notes equal to ten per cent, and the holder pays such

sums and procures the taking and discounting of the notes, the purchaser having no knowledge of the terms upon which the extension had been granted by the legal holder of the notes, the party so taking and discounting the notes will not be chargeable with usury.

3. ASSIGNMENT—*defense against assignee, in equity.* In equity, on bill to foreclose a mortgage by the assignee of a note, secured by trust deed, the mortgagor may interpose any equitable defense he has against the original payee or mortgagee arising out of the original transaction; but this rule does not extend to a set-off of a debt due from the assignor to the mortgagor, arising out of a collateral or subsequent matter.

4. PARTIES—*to bill to foreclose.* On bill to foreclose a deed of trust upon land selected subsequent to the making of the deed of trust, and taken possession of by the South Park commissioners, and condemned by legal proceedings, but not paid for, such commissioners are necessary parties.

5. FORECLOSURE—*of land taken for public use.* Where mortgaged property is condemned and appropriated to public use, and the compensation awarded to the owner or mortgagor exceeds the sum due on the mortgage, and is not paid, it is not proper on bill to foreclose to order a sale of the premises. The sum found due should be ordered paid out of the condemnation money.

APPEAL from the Circuit Court of Cook county; the Hon. W. K. McALLISTER, Judge, presiding.

Mr. EDWARD ROBY, for the appellant.

Mr. C. C. BONNEY, and Mr. J. L. HIGH, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On June 8, 1874, appellee, The State Savings Institution, filed its bill in chancery in the circuit court of Cook county, to foreclose, as a mortgage, a trust deed given by appellant, Charles W. Colehour, to Clinton C. Clark, as trustee, April 15, 1870, to secure the payment of two promissory notes made by Colehour to Sidney T. Webster and James Walsh, one for $20,000, payable on or before March 1, 1872, with eight per cent interest, and the other for $10,000, payable on or before December 14, 1872, with nine per cent interest. The trust deed conveys the undivided half of the west half of the northeast quarter of sec. 24, town 38, range 14, in Cook county.

The bill avers that the complainant purchased the notes June 8, 1872; that Colehour has partitioned and is vested with the title to the west half of the tract, and offers that the debt be charged upon this divided parcel.

The answer of Colehour sets up in defense, that the notes passed into the hands of the complainant by delivery from one Martin Andrews, who, previously thereto, was the legal owner and holder of the same by means of the indorsement of them by Webster and Walsh, and that Andrews, on June 8, 1872, having negotiated a sale of the notes to the complainant, an arrangement was entered into for the extension of the time of payment of the notes for the period of one year, to-wit: until June 8, 1873, and that by the arrangement, and in order to obtain it, Colehour paid a sufficient sum to make the interest for the ensuing year amount to ten per cent, and in addition thereto paid the further sum of $1500, whereupon Andrews gave to Colehour a writing of that date, signed by Andrews, reciting that the notes were still owned and held by Andrews, and therein agreeing to extend the time of payment of the notes for one year, for the alleged consideration of the payment by Colehour of the interest up to that date, and that complainant gave to Colehour a writing to stand to this agreement which had been made by Andrews. In this, the answer alleges, there was usury, and that complainant, when it took the notes, had notice of such alleged usurious arrangement made by Andrews with Colehour, wherefore it claims that $1500 should be credited as paid upon the principal of the notes on June 8, 1878, and that no interest is lawfully chargeable thereafter, but offers to pay six per cent per annum interest after that time.

The bill further avers, that the lands in question are part of the lands mentioned in "An act to provide for the location and maintenance of a park for the towns of South Chicago, Hyde Park and Lake," approved February 24, 1869, under which act the South Park commissioners have made formal selection of said lands, and under color of said selection, with-

out the consent of Colehour, have taken possession thereof, by surrounding the same with a post and board fence, and claim a paramount right and interest in the lands, and insists that the said park commissioners are necessary parties.

The court below, on final hearing, found the amount due to the complainant on the notes November 6, 1876, to be $41,031.95, which it ordered to be paid within thirty days from that time, and in default of the payment decreed the sale of the land for its satisfaction. Colehour appealed.

As respects the question of usury which is made, it appears, from the evidence, that Andrews was the owner of the notes, $20,000 of the amount having matured, and the remaining $10,000 being about to fall due within a few months. Colehour applied for an extension of time, but Andrews needed the money and could not grant the extension. Andrews then undertook to find some other party to take the securities and extend the time of payment, and Colehour agreed to pay Andrews for that service a commission of $1500, and to make the interest on the notes for the time of the extension equal to ten per cent. An extension of one year was obtained through the State Savings Institution, and $2000 paid by Colehour to Andrews, being the $1500 and the amount to make the interest ten per cent. Andrews testifies that he dealt with the bank as the owner of the paper, and transferred it to the bank without indorsing it or making himself personally liable; that his negotiations with Colehour and the bank were two separate matters; that he did not tell the bank of his arrangement with Colehour; that the bank stated they would purchase the paper by making it equal to ten per cent, and would charge a commission of $1500; that he gave to the bank his check for $2000, June 8, 1872. The officers of the bank who negotiated the purchase of the notes and trust deed, testify that they had no knowledge of the transaction between Colehour and Andrews, or of the $2000 paid to Andrews.

The money paid by Andrews to the bank was rather a discount than a commission. It is not usury to buy a note in

the course of business at a discount greater than the rate of interest allowed by law. *Sherman* v. *Blackman*, 24 Ill. 347.

It is said, there was here paid by the debtor to the creditor $1500 above the rate of ten per cent interest for the forbearance of the debt for one year, and that must be usury. But the testimony shows there was no privity between the State Savings Institution and Colehour, the debtor, in such arrangement. The bank simply purchased of the creditor, at quite a discount, paper upon which there was a year's extension of the time of payment, knowing nothing in regard to the terms upon which the extension had been granted. The notes in suit, and the trust deed to secure them, are free from any taint of usury. If there be any usury, it is in the contract of extension of time of payment; but that is entirely distinct from the contract of the notes. It is the latter contract which appellee is seeking to enforce, and it makes no claim in respect of the former.

If the agreement of forbearance by the former holder of the paper, Andrews, was an usurious one, we do not consider that it should attach to the notes, and infect them with usury in the hands of a subsequent purchaser without notice, or form any matter of defense as against him.

Although it be the rule in this State that where there is a promissory note secured in its payment by a mortgage, an innocent transferee of the note before maturity, in a suit for the foreclosure of the mortgage, will be subject to any equitable defense on the part of the mortgagor, when the note itself, if the suit were upon it, would be exempt from such defense, (*Olds* v. *Cummings*, 31 Ill. 188, and subsequent cases,) we understand this as restricted to all equities arising out of the note and mortgage transaction itself, and not extending to a set-off in respect of a debt due from the assignor to the mortgagor, arising out of a collateral matter, such an one as we view this, here, to be. See Chit. on Bills, 13 Am. ed. 251.

The court below found the facts upon the question of usury

against the appellant, and we find nothing in the record requiring us to find the facts the other way, or the conclusion of the court below against this defense to be wrong.

It appears, by the proof, that on April 21, 1873, the South Park commissioners took possession of the land in question, and inclosed the same with the park, and have ever since occupied and controlled the same. There were introduced in evidence proceedings on the part of the South Park commissioners for the condemnation of the land for the park, from which it appears there has been a verdict of a jury assessing as compensation for the land taken a sum largely exceeding the amount of the decree herein, without anything further appearing. Under these circumstances, we think there should not have been any decree of the sale of the land, but that the complainant should have been left to receive the amount of the decree out of the condemnation money for the land. That is all that will be able to be realized out of the land, situated as it is. It is, in effect, sold to the South Park commissioners, and all that any one is entitled to receive in respect of the land is its value as it may be determined to be in the proceeding for the condemnation of the land.

There is a reasonable certainty that the condemnation money for the land will be paid. The sale of the land under the order of sale might result most injuriously to the owner of the equity of redemption, and we do not see wherein it could substantially benefit the complainant. The South Park commissioners, too, we think, should have been made parties.

We find no reason for reversing the decree, except as respects the order of sale, and not making the South Park commissioners parties; but as it may be better for the appellee that the decree should be reversed in the whole, in respect of the benefit of the larger interest which the mortgage debt bears above that of the decree, the decree will be reversed, and the cause remanded for further proceedings conformable to this opinion, with leave to amend the bill by adding parties.

                                        *Decree reversed.*