---

(No. 13934.—Reversed and remanded.)
FREDERICK A. ALDRICH, Trustee, *et al.* Appellants, *vs.*
THE R. J. EDERER COMPANY, Appellee.

*Opinion filed February 22, 1922—Rehearing denied April 5, 1922.*

1. LIENS—*when equitable lien arises.* Where parties enter into an express executory agreement in writing, indicating an intention to make some particular property, real or personal, or a fund, security for a debt or other obligation, an equitable lien is created on the property described in the contract, which is enforcible in the hands of the original contractor and his heirs, administrators, executors, voluntary assignees, purchasers and incumbrancers with notice.

2. SAME—*equitable lien is a remedy for debt and not a right of property.* An equitable lien is the right to have property subjected in a court of equity to the payment of a claim, and it is neither a debt nor a right of property but is a remedy for a debt.

3. EMINENT DOMAIN—*owners of fee have no property right in compensation paid to lessee.* Owners of the fee to land in which a leasehold estate has been created, the building on the land being owned by the lessee, have no property right in the fund awarded to the lessee for taking part of the building in a condemnation proceeding, and they are not entitled to have the fund sequestered to secure payment of rent where the lien for rent may be otherwise protected.

4. SAME—*when court should retain enough of lessee's fund to cover cost of re-building.* Where a portion of a building on land leased for a long term has been taken in condemnation proceedings, the building being owned by the lessee, and the owners of the fee have filed a bill seeking to have the compensation awarded the lessee sequestered to secure their lien for the payment of rent but there is not a sufficient showing to justify granting such special relief on account of an averment by the lessee in its answer that it intends to re-build, the court should, under a prayer for general relief, retain control of enough of the fund to cover the cost of re-building.

5. SAME—*award of compensation to lessee is not res judicata of right of owner of fee to preserve lien for rent.* Where con-

demnation proceedings authorize the taking of a portion of a build-
ing which is on land under a long-term lease, an award of com-
pensation to the lessee, who owns the building, is not *res judicata*
of a subsequent proceeding in equity by the owners of the land
to have the fund awarded the lessee set aside to protect their equi-
table lien for rent, as the county court in the condemnation pro-
ceedings has no jurisdiction to so protect an equitable lien.

APPEAL from the First Branch Appellate Court for the
First District;—heard in that court on appeal from the Cir-
cuit Court of Cook county; the Hon. OSCAR M. TORRISON,
Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, (S. SIDNEY STEIN,
I. B. LIPSON, and HENRY JACKSON DARBY, of counsel,)
for appellants.

CUSTER & CAMERON, and GEO. A. MASON, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the
court:

The appellants, as lessors, filed their amended and sup-
plemental bill of complaint against the appellee, as lessee
under a certain lease, and the county treasurer, praying an
injunction restraining the county treasurer from paying to
the appellee the sum of $139,795.51 damages arising out
of the condemnation by the city of Chicago of certain of
the leasehold property for public use; that said sum be re-
quired to be paid to appellant Aldrich, trustee, to be held
by him subject to the rights of all persons interested in the
fund and subject to the lien for the payment of rents pro-
vided in the leasehold; praying as alternative relief that
the sum be sequestered and set apart and impressed with a
trust in favor of Aldrich, trustee, and be declared the sub-
ject of an equitable lien in his favor for the payment of
the rents provided for in the lease. The circuit court dis-
missed the bill for want of equity. That decree was af-
firmed by the Appellate Court, and the cause comes here on
a certificate of importance granted by the Appellate Court.

It appears that the appellee company, a corporation incorporated under the laws of this State to do a business of manufacturing fish-nets, originally owned the property in question, consisting of two lots on the east side of Michigan avenue between River street and South Water street, in the city of Chicago, improved with a four-story building entirely covering the lots. In 1906 appellee sold this land to Mary O. Newell for $140,000, reserving to itself the title to the building, and at the same time took back from her a lease of the land for 99 years, expiring on March 31, 2005, at an annual rental of $6300 throughout the term. Appellant Aldrich became the owner of the interest of Mrs. Newell as trustee for other appellants. In 1917 the city of Chicago took the west 61½ feet of this land under condemnation proceedings, for the purpose of widening Michigan avenue. There remained of this property after the condemnation proceeding a tract of 79½ feet on Michigan avenue, with a depth of 62½ feet. The county court in the condemnation proceeding fixed the total compensation to all parties interested in the premises taken, at $142,880. No appeal was taken from this judgment. The appellee thereafter filed in the county court a petition asking that the damages be prorated and paid in accordance with the interests of the parties, setting up in its petition that no one except Mrs. Newell, who then owned the fee, and the appellee, were interested in the property. It was during the pendency of this petition that Mrs. Newell conveyed the premises to Aldrich as trustee, subject to the lease. The county court divided the award, giving to appellants the sum of $3084.39 as representing their interest in the fee, and to appellee the sum of $139,795.51, the amount involved here. Aldrich, as trustee, thereafter petitioned the court for an order on the county treasurer to pay to him the sum of $3084.39 awarded as damages to the fee for land taken, and the same was paid to him.

The original bill in this cause was filed on March 8, 1918, and a preliminary injunction was granted by the chancellor. The bill sets out the description of the property, the terms of the lease, the condemnation proceedings and the award thereon; also the assessment of benefits against the property not taken of $14,324, together with the fact that the amount of the condemnation, less the $14,324, or $128,502.15, has been deposited with the county treasurer by the city. The bill avers that the portion remaining since the west 61½ feet has been taken is worth less than the entire lot; that the portion of the building remaining is practically valueless and though re-built will be less valuable than originally and that by reason of such conditions complainants' security and lien for rent were materially diminished and impaired, and prays that the sum found as an award to the lessee be so controlled that it will remain as security for the payment of rent. Appellee answered, admitting the facts averred concerning the condemnation proceeding alleged in the bill but setting out its financial responsibility; averring that it is of such financial strength as to afford ample security for the lease, and alleging that the condemnation proceeding, instead of being a detriment to the remaining portion of the property, has greatly increased the value and earning power thereof; that while at the time of the purchase by appellants' grantor from appellee the purchase price was fixed at $140,000 for the entire tract, yet the land remaining, exclusive of improvements, has by reason of the widening of Michigan avenue acquired a value of approximately $150,000 without improvements. Appellee avers in its answer that it has caused plans to be prepared by architects for remodeling the premises into a building designed for offices and shops for manufacturers' agents at an estimated cost of $50,000, and avers that the value of the land will be very greatly increased owing to such remodeling and the earning power of the remaining portion of the land much greater than

that of the entire tract before the improvement of Michigan avenue, and that the appellants' security has not been jeopardized.

The lease as set out in the bill of complaint provided that the same should be "a valid and first lien upon any and all buildings that may be erected or placed on said premises and upon the interests of the lessee and its assigns in this lease and the premises hereby demised." This lien was recited in the lease as covering the payment of rentals, taxes, assessments, water rates, special assessments, and all other costs and charges assessed against the real estate.

The question involved in this lawsuit is as to the disposition of the money paid by the city in the condemnation proceedings. It is not denied that the appellant trustee has a lien on the leasehold property for payment of the rents and charges, nor that the lease continues without diminution of rent for the balance of the term. It is also conceded that the fund awarded to appellee stands in the place of its leasehold interest in the premises. Appellee contends, however, that it has the right to this money free from any lien thereon, while appellants contend that they have a right to have the money sequestered or put into the hands of a receiver in order to insure the payment of the rent; that they are entitled to a decision holding that they, under the lease, have an equitable lien on this fund.

It has been held that whenever parties enter into an express executory agreement in writing indicating an intention to make some particular property, real or personal, or a fund, security for a debt or other obligation, there is created an equitable lien on the property described in such contract which is enforcible in the hands of the original contractor, and also his heirs, administrators, executors, voluntary assignees, purchasers and incumbrancers with notice. (*Walker* v. *Brown,* 165 U. S. 654; 10 R. C. L. sec. 100.) An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. It is not a

*jus in re* or a *jus ad rem;* neither a debt nor a right of property, but a remedy for a debt. (*Webster* v. *Nichols,* 104 Ill. 160.) "It is simply a right of a special nature over the thing which constitutes a charge or incumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree, and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists." (3 Pomeroy's Eq. Jur.—4th ed.—sec. 1233.) The application of the doctrine of equitable lien has been recognized in this State. *Webster* v. *Nichols, supra.*

It must be conceded that if there has been a depreciation of the lien contemplated by the lease appellants are entitled to have such lien protected. Appellants allege in their bill that such lien will be depreciated, while this is denied by appellee. In this connection appellee urges, both in its answer and in argument, that its financial ability, as shown in the record, is of itself sufficient security against loss to the lessors in this case. We are not impressed with this argument. While the record undoubtedly shows a strong financial condition at this time, yet the lease had at the time of the hearing 87 years to run, and there is no assurance that within that period of time appellee's assets may not be lost and itself go out of existence. Moreover, it does not appear from the lease that the present financial strength of the lessee was taken seriously into account in the matter of lien, as the lease provides that the property itself, and the leasehold interest therein, shall constitute a lien for the payment of rent and other charges, so that if the condemnation proceeding in this case, by taking a portion of the property which is the subject matter of the lease and the lien arising therefrom, results in a reduction of the value of the property from that which it had at the time the lease was made, then it must be held that the lien of appellants has been jeopardized. The only ground upon

which appellants seek equitable relief is that the payment
to appellee of the money arising from the condemnation
proceeding will materially affect their lien. This, it will
be seen, can be the only basis upon which such relief could
be asked. They cannot be otherwise concerned in the dis-
position of the fund awarded to appellee in the condemna-
tion proceeding. They have no property right in such fund,
but may require its use in such a manner as to protect their
lien. *Colehour* v. *State Savings Institution,* 90 Ill. 152.

Appellee by its answer avers that it intends to remodel
the remaining portion of the building for a higher and
better use than that to which it was put before the con-
demnation proceedings were instituted; that by reason of
the widening of Michigan avenue a demand is created for
such higher use for the remaining portion of the premises,
with the result that it will make that part of the premises
more valuable than the entire premises were originally. On
the question of values and earning power of the property
before and after the condemnation proceedings two wit-
nesses were called,—one for the complainants and one for
the defense. On behalf of complainants, Robert White, a
real estate dealer in the city of Chicago, testified that the
land remaining after the improvement involved in the con-
demnation proceeding, without regard to any improvements
on it at all, was worth $28 per square foot, or a total of
$140,336; that before the widening of Michigan avenue
the value of the entire land was $21 per square foot. The
witness stated that in his judgment the best income-produc-
ing improvement that could be put upon the remaining por-
tion of this lot is a five or six-story building; that he had
not considered what gross or net income might be expected
from such a building, but that in his opinion the portion
of the building remaining on the property would not bear
sufficient income to meet the rental and other expenses.
Edward C. Waller, also a real estate dealer, testified on
behalf of appellee. He stated that the total tract before

the improvement had a value of $21.47 per square foot exclusive of the building; that after the completion of the improvement the remaining portion of the land will be worth $35 per square foot exclusive of improvements; that the total valuation of the remaining land after the improvement will be $175,420. This witness testified that an improvement on the land such as appellee avers is its intention to make will add at least $60,000 to the value, making a total value of $235,420. The testimony of Frank B. Long also showed that plans have been drawn for re-building the remaining portion of the building, as appellee avers in its answer is its intention to do. The record also shows that the cost of such re-building will be from $65,000 to $70,000, using such parts of the remaining portion of the building as are available. The witness Waller testified that such a building as is proposed to be re-built will yield a rental of $14,000 per annum, net, over and above taxes, insurance and operating expenses. The testimony of these three witnesses constitutes all the evidence in the case concerning the value of the remainder of the leasehold after the condemnation of the portion of the premises for street purposes.

It is evident from the record that appellants did not maintain the burden cast upon them by their bill of establishing that their lien was endangered or jeopardized by the condemnation proceeding, but taking into consideration the re-building, as shown by the plans offered in evidence, which appellee in its answer says it proposes to do, we are of the opinion the evidence shows that the lien value of the premises will not be decreased. Appellee's witness Waller testified that in his judgment the net income or rental from the premises will be, when re-built as appellee proposes, $14,000 per year, net. This is more than twice the amount of rentals required by the lease in question. The witness White, who testified for appellants, did not base his estimate of income of such remaining portion of the premises on the plans offered in evidence but on the

remaining portion of the building rehabilitated. Appellants should not be allowed to have this fund sequestered where the record shows that the lien may be protected by re-building the premises. (*Stopp* v. *Wilt*, 177 Ill. 620.) We are of the opinion, however, that the record does show that unless such re-building be done the income value of the property has been depreciated by the condemnation of a portion of it. Indeed, this appears to be conceded by appellee. Appellants have an equitable interest in the fund paid to appellee, to the end that the building proposed by appellee, with an earning value such as the evidence shows it will have, shall be erected. It is the duty of appellee to preserve the lien, and the ·chancellor had jurisdiction to require that it make such improvements as are shown by the record to be necessary so to do. *Stopp* v. *Wilt, supra.*

We are of the opinion, therefore, that the Appellate and circuit courts erred in holding that there was no equitable lien which equity should protect, belonging to appellants. While the relief prayed for by appellants did not contemplate the control of the funds arising from the condemnation proceedings, to the end that so much as is necessary to make the lessors secure shall be put back upon the premises, their bill asks for general relief, and equity having jurisdiction of the case will do justice between the parties. Appellee should have been required, under the prayer for general relief, to give satisfactory assurance that a building of substantially the earning capacity which the record shows the proposed improvements would have will be erected without delay, and the chancellor should have declined to release the fund to appellee but should have retained control of the. same, or so much thereof as may be necessary to cover the cost of such building and protection against mechanics' liens, to the end that the premises be so re-built as to protect the lien of appellants.

Appellee contends that the judgment of the county court apportioning the fund arising from the condemnation pro-

ceedings is *res judicata* of the point involved here, and that while appellants did not ask for equitable relief in their answer to its petition for a distribution of the fund they might have done so. The condemnation suit was a process by which the property of the parties hereto was taken for public use. The court having jurisdiction in the condemnation proceedings had authority to distribute the fund which represented the property taken. We have seen that the equitable lien of the lessors is not property, but a right arising out of the contract of lease. It was not a part of the property taken, and could not, therefore, be the subject matter of an order of the county court distributing the fund representing and standing in the place of the property taken. An equitable lien is neither property nor a debt but only a remedy for a debt. The city, in the condemnation proceedings, therefore, was not and could not have been condemning the lien. The judgment of the county court entered upon the petition of appellee to divide the award determined the portions thereof representing the reversionary and leasehold interests in the land taken. These were the only matters included in this judgment. The order of distribution had to do only with the subject matter of the judgment of condemnation. Moreover, we have seen that the lessors have an equitable right to have the property remaining re-built and put into such condition as will become an adequate protection for the contract of lease. Requiring this to be done is purely an equitable function. Equitable liens are cognizable only by courts of equity. (1 Pomeroy's Eq. Jur. 264; 10 R. C. L. 350.) County courts are not courts of general chancery jurisdiction, and there is nothing in the Local Improvement act either expressly or impliedly giving to county courts jurisdiction in matters of this character. Section 28 is referred to as being a basis for such jurisdiction. This section empowers a court to require adverse claimants to interplead so as to fully determine their rights and interests

in the compensation ascertained, and empowers the court to make such order as may be necessary in regard to the deposit or payment of the compensation. It will be noted that this provision has to do with the distribution of the fund representing the property taken. There is nothing in the language of that section or any other section having to do with the preservation of an equitable lien arising out of a contract of lease affecting property involved in the condemnation proceedings. Appellants were not, by the judgment of distribution of this fund, deprived of their right to apply to a court of equity to protect their lien.

The judgment of the Appellate Court and the decree of the circuit court are reversed and the cause remanded to the circuit court for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*