(No. 2146—

MAX K. MEYER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 12, 1937.*

H. L. FEIGENHOLTZ, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

The contention of the claimant, Max K. Meyer, of the Village of Winnetka, County of Cook and State of Illinois, in this case is that on the 8th day of December, 1927, Frank J. Bruno and Helen Bruno, his wife, gave their certain promissory note or notes to him, due five years after date with interest at six per cent. per annum, in the sum of $4,500.00, and to secure the same, gave a trust deed to Max K. Meyer, on premises described in the complaint.

It is further alleged that in the year 1930, the State of Illinois, wrongfully and unlawfully appropriated and took for the construction of the State road known as Skokie Highway, a part of the premises covered by the trust deed and described in the complaint, and it is alleged that the State of Illinois never paid the claimant the value of the land so taken, and claimant makes claim against the State for the sum of $1,000.00, being the value of the land so taken.

A considerable time after this claim was filed, an amendment thereto was filed by claimant, and the adamnum was increased from the sum of $1,000.00 to the sum of $2,500.00, the extra $1,500.00 alleged as damages is for damages for land not taken by the State.

A stipulation was filed to the effect that on the 8th day of December, 1927, Bruno and his wife, executed a trust deed to Max K. Meyer, as trustee, conveying the property in-

volved, and that deed was duly recorded on December 21, 1927 in the Recorder's Office of Cook County, and that thereafter, on March 20, 1929, Bruno and his wife, executed a second trust deed to Max K. Meyer to secure a note for the sum of $1,200.00; that said second trust deed was duly recorded on March 22, 1929, and thereafter, on April 21, 1930, Bruno and his wife, conveyed by warranty deed, the property involved to Helen Lala, which deed was duly recorded. It is further stipulated between the parties that a Dedication Plat for Public Highway Route No. 57 was made by Bruno and his wife, the actual date not appearing upon the dedication plat, but which was acknowledged on August 7, 1930, and recorded on July 8, 1932. It is also stipulated that a Certificate of Sale was issued by the Master in Chancery, Julius H. Miner, dated December 29, 1932, and recorded in the Recorder's Office of Cook County on January 5, 1933. It, therefore, appears as a matter of record, that the trust deed dated on the 8th day of December, 1927, was a prior lien.

The record does not directly disclose the purport of the Master's Certificate dated December 29, 1932, but we assume from other statements in the record that this Certificate of Sale is the result of the foreclosure of a second trust deed dated March 20, 1929. The warranty deed from Bruno and his wife, dated April 21, 1930, and running to Helen Lala can have no effect upon the rights of Max K. Meyer, the claimant. The effect of the dedication plat might, however, be different. The record does not disclose who the actual owners of the notes secured by the trust deed are, but from the declaration it is averred that in the year of 1930, Meyer, the claimant, was the legal holder and owner of the trust deed and notes dated the 8th day of December, 1927.

A hearing was had and two real estate men, both equally familiar with the valuation of land in the vicinity of the premises wherein the land in question was located, testified. It appears that approximately one-fourth of the land was taken for highway purposes. The record does not disclose whether a Master's Deed was ever issued upon the Master's Certificate above referred to. Neither does the record disclose who had the possession of the premises dedicated for highway purposes, at the time of such dedication. While we might safely assume that a sale was had under the second trust deed, the record does not disclose who the purchaser at

the sale was, nor the amount of the purchase price. These questions, and other similar questions that might be raised under the view that we take of this case, are unimportant. It is likewise unnecessary for us to consider "damages" to the land "not taken." The witness, Louis T. Dodds, who testified for the claimant, apparently was a man who had had much experience as a real estate broker in this particular vicinity. An examination of his testimony discloses that he was a man of good judgment on such matters, and his testimony is, therefore, quite convincing. According to his testimony, the property in question at a time immediately after the dedication, was worth the sum of $9,000.00. What is said of Mr. Dodds can be said with equal force of the witness for the State, Mr. J. Frederick Kinney, who placed the valuation of the premises in question at $6,320.16. Insofar as this record is concerned, it is immaterial which witness is right or which witness is more nearly right, because the value fixed by both witnesses is sufficient to cover the principal amount of the note secured by the first trust deed, less a depreciation of valuation on the property not taken. The complaint does not claim any damages under the second trust deed. If this had been a condemnation proceeding, it would leave the claimant here with all of his rights set forth in the trust deed. It is very apparent that he has not suffered any damages by the dedication of the specific property mentioned in said trust deed. Where the loss of security is material, as it is always assumed to be whenever the entire mortgaged estate is condemned, the courts will grant the mortgagee some remedy. In some states, the legal title to land, subject to a mortgage, is held to vest in the mortgagor and the mortgagee is regarded simply as a secured creditor. In such states, the latter party is not recognized as a party in the condemnation proceedings and the entire award is assigned to the mortgagor, but the mortgagee, in such jurisdictions, may have his award applied to the payment of his debt by a court of equity. 1 Nichols, Em. Dom. 353, 2 Lewis, Em. Dom. Secs. 523, 720. But in the majority of jurisdictions, particularly where the mortgagee is deemed to have title to the land, subject to defeasance and to the mortgagor's equity of redemption, the courts recognize the interest of the mortgagee in the condemnation proceedings themselves. Whenever the entire mortgaged property has been "taken," these courts have held

that the award payable to the condemnor stands in the place of the land, and that the various liens which attached to the land, now attach to the award. *Colehour* vs. *State·Savings Inst.* 90 Ill. 152.

The Supreme Court of Illinois in the case last cited also held that where mortgaged property is condemned and appropriated to public use, and the compensation awarded to the owner or mortgagor exceeds the sum due on the mortgage, and is not paid, it is not proper on bill to foreclose to order a sale of the premises. The sum found due should be ordered paid out of the condemnation money.

In the case before us, the security for the notes is not destroyed and may not be even substantially impaired. The record does not disclose that a receiver has been applied for. In such cases, a receiver could only be appointed by the court if there was scant security for the debt.

In *Federal Trust Co.* vs. *East Hartford Fire District,* 283 Fed. 95, and in *Knoll* vs. *New York, etc.,* R. Co. 121 Pa. 467, 472, 1 L. R. A. 366, a case decided in 1888, where the condemnor had paid compensation to the mortgagor for a "damaging," the court refused to allow the mortgagee to recover against the condemnor, because it appeared that the mortgage debt was "abundantly secure." So it appears in this case.

An award, therefore, will be denied, and the motion of the Attorney General, which motion we have construed as a demurrer to the evidence, will be sustained. This cause is, therefore, dismissed.