(No. 30517.—)

JOHN WESLEY WATSON *vs.* MELLA HOBSON *et al.,* Appellants.— (SOPHIA WILLIS *et al.,* Appellees.)

*Opinion filed September 24, 1948—Rehearing denied Nov. 11, 1948.*

Duck & McManigal, (Thomas Marshall, of counsel,) both of Chicago, for appellants.

Morris K. Levinson, and Samuel L. Cohen, both of Chicago, for appellees.

Mr. Justice Daily delivered the opinion of the court:

This is a proceeding arising out of a complaint for partition of real estate which was filed in the superior court of Cook county, by one of the appellees, John Wesley Watson, hereinafter called plaintiff, against Mella Hobson and others, who shall hereinafter be referred to as defendants. This cause was previously before this court on a premature appeal taken by defendants from an order of the trial court which struck their third amended answer and counterclaim for want of legal sufficiency. That appeal was dismissed because the judgment appealed from was not final. (396

Ill. 617.) Further proceedings, which will be detailed later, were then held in the trial court, with the result that a decree of partition was entered on October 8, 1947, as prayed in the plaintiff's complaint. Defendants now bring a direct appeal from that decree, a freehold being necessarily involved. The first contentions made here are those which were raised on the former appeal, *i.e.*, that the trial court erred in dismissing the defendants' third amended answer and counterclaim.

From the record before us, it appears that John Wesley Watson filed, on July 25, 1944, his complaint for partition in the superior court of Cook County, alleging that he was the owner of an undivided one-half interest in the premises involved herein, as the grantee of Sophia Willis, his elderly aunt, who still lives. Defendants named in the complaint were Sophia Willis; her sister, Mella Hobson, as the owner of the other half interest; James Hobson, the husband of Mella Hobson; the trustee under a mortgage on the premises; the real-estate manager of the building on the premises; and the tenants of said building. Sophia Willis later filed a counterclaim against all parties asking for an accounting for rents accruing during her occupancy. By leave of court entered on October 15, 1944, leave was granted to Emith Whitaker and George E. Murphy, and to Ernest L. Duck and Thomas A. McManigal, the latter law partners, to become parties defendant to the complaint. A short time later the same parties were granted leave to be made defendants to the counterclaim of Sophia Willis, and to file instanter their joint answers and counterclaims, both to the complaint and to the counterclaim of Sophia Willis. All defendants joined in an answer to the complaint and to the counterclaim of Sophia Willis. The Hobsons filed their counterclaim against the plaintiff and Sophia Willis, as did each of the other defendants. Later all defendants, except Sophia Willis, joined together in subsequent pleadings filed.

On motions made by the plaintiff Watson and by Sophia Willis to test the sufficiency thereof, the original and the first and second amended answers and counterclaims filed by the defendants were stricken by the trial court. When the third amended answer and the third amended counterclaim were in turn ordered stricken, the court granted leave to the defendants to plead further, but they elected to stand by their said pleadings and an order of default was entered for failure to plead over. The cause was taken as confessed and the matter was referred to a master in chancery for hearing. The defendants appealed from said order to this court and the appeal was dismissed by this court, (396 Ill. 617,) on the ground that the order of the trial court was not a final and appealable one.

Thereafter the cause proceeded before the master in chancery on the original order of reference. The defendants did not appear before the master after due notice was given them, and the master made a report recommending partition of the premises in accordance with the prayer of the complaint. The chancellor entered a decree approving the master's report, finding that the plaintiff and defendant Mella Hobson each owned an undivided one-half of the premises subject only to the mortgage thereon and an inchoate right of dower in James Hobson; ordered that partition be had and appointed commissioners as provided by statute. It is from this decree that the appeal herein is taken by the defendants.

This brings before this court the legal sufficiency of the defendants' third amended answer and their third amended counterclaim. Both of these documents are lengthy, they are replete with charges of family controversies over the years and it is extremely difficult to analyze the matters therein set forth. We will set forth what we consider to be the allegations of fact material to the questions involving the relief prayed at the end of each instrument. While the statements of defense and claims are worded differently

in both pleadings, they are practically the same. It is alleged that Edna B. Mitchell in her lifetime was the sole owner of the premises involved herein; that she died on November 26, 1936; that Sophia Willis and Mella Hobson were sisters of advanced age and were the aunts of the said Edna B. Mitchell; that said Edna B. Mitchell in her lifetime, having expressed a desire to secure the future welfare of Sophia Willis, entered into an agreement, (which defendants concede to have been an oral one,) with said Sophia Willis, during a conference at which Mella Hobson, Emith Whitaker and George E. Murphy were present and participating, whereby all parties would forgive and cancel their charges against Sophia Willis for past care, and Mella Hobson should assume all future care of her sister; that on Edna B. Mitchell's death she would leave her property to her two aunts for their lives, to be their home during that time; that said property was not to be sold or divided during the lives of the two aunts; that George E. Murphy should assist his mother, said Mella Hobson, in caring for the real estate and apartment building on the premises; that upon the death of Sophia Willis and Mella Hobson, the real estate described in the complaint should go to the said George E. Murphy as remainderman. It is further alleged that after the death of Edna B. Mitchell, by consent of all parties surviving, the agreement was modified by Sophia Willis, who agreed to forthwith convey to Mella Hobson her one-half share of the property in furtherance of the latter's previous agreement to maintain and care for Sophia Willis the balance of her life.

As to the matters involving the claim of George E. Murphy, it is alleged in both pleadings that Sophia Willis and Mella Hobson became indebted to said Murphy for care of, and for repairs made on, their buildings during their period of joint ownership, and that being unable to pay him in cash, they agreed that said real estate and the rents thereon were to be held by them as security for the

payment of the money due said Murphy until the same was paid, and that the said obligation was never paid or cancelled.

The allegations as to the claim of the law firm of Duck & McManigal are that the lawyers had successfully set aside a purported will of the said Edna B. Mitchell, wherein part of the premises had been left to others than her two aunts; that the lawyers had earned a large fee for such legal services which no one could pay in cash, and that Sophia Willis, Mella Hobson and George E. Murphy, who are said to have employed them, agreed that the fees of said attorneys should be a lien on the real estate and rents therefrom until the same were paid, and that the indebtedness was still unpaid.

It is set forth that Edna B. Mitchell died intestate leaving as her sole heirs and next of kin her two aunts, said Sophia Willis and Mella Hobson. Defendants allege further that Mella Hobson began performance under her oral agreement heretofore related, to care for her sister, and was still ready and willing to continue the same until the latter's death. In conclusion they allege that all of said agreements are binding on John Wesley Watson, and charge that he had either actual or constructive notice thereof, with the result that many of his present acts constitute fraud.

In the prayer of the third amended answer, defendants ask that the partition herein be barred by reason of the promises of said Sophia Willis heretofore set forth, wherein she agreed not to divide the real estate. In the prayer of the third amended counterclaim now being considered by this court, the defendants ask the same relief as prayed for in the amended answer, and in addition they pray that the court decree that the undivided one-half of the life interest of Sophia Willis in the premises be declared to be the property of Mella Hobson subject to continuance of care of Sophia Willis in the future, and subject also to the

liens of said George E. Murphy and the said attorneys thereon. There is no specific prayer in the third amended counterclaim that George E. Murphy be declared to have a remainder interest in the property.

The only promise alleged to have been made by Sophia Willis not to divide or partition is the one said to have been included in the oral conversation and agreement between the parties present when Edna B. Mitchell promised to leave the property to her aunts upon her death. In our application and construction of the legal effect of this agreement, we find the fact to be that the two aunts did not acquire the property from their niece, Edna B. Mitchell, by virtue of a devise in any will, or by any document executed by the latter, but that they became the owners thereof by descent as the only heirs of the said Edna B. Mitchell. Should the property have been devised later to Sophia Willis, which is not the fact, we would be compelled to hold the agreement not to partition would have merged in an unconditional gift of the property and have no effect whatsoever, for it would have been but one of the negotiations leading up to the transfer, and unenforceable due to the merger. As stated in the pleadings, Sophia Willis was to get but a life estate under the alleged contract not to partition, and we find her actually obtaining a fee-simple title by descent, an acquisition separate and apart from the one promised her when she is said to have agreed to refrain from dividing or selling. Therefore, we must hold that the consideration for the alleged promise of Sophia Willis to refrain from dividing the property failed, when her niece died without leaving it to her in the manner and to the extent that she had mutually promised she would do by will or other conveyance. Any such contract claimed to have been made by Sophia Willis became ineffective and unenforceable after the death of Edna B. Mitchell. The fact that the property acquired happened to be the same real estate under consideration when the conversation was

had during the lifetime of Edna B. Mitchell would make the alleged agreement no more binding on Sophia Willis than if it had been other property, where she acquired the particular real estate, not as the result of the promise to give it, but by inheritance from the owner dying intestate. The aforesaid observations are sufficient to refuse relief from partition on such an alleged promise, but the most serious objection to enforcing the alleged agreement not to partition is that it was made at a time when the promisor had no interest whatsoever in the real estate, and at a time when the title was in Edna B. Mitchell. This court has recently held that to have an effective and legally binding agreement not to partition, the title to the undivided interest therein must have been vested in the promisor at the time the promise was made. (*Stromsen* v. *Stromsen,* 397 Ill. 260.) Since this claimed agreement was made before Sophia Willis acquired any kind of title to the premises, the said agreement did not bind her when she afterward acquired the title. The superior court of Cook County was correct in striking the third amended answer of the defendants.

The affirmative relief asked by Mella Hobson, in her portion of the counterclaim in controversy herein, is for specific performance of the alleged contract between her and Sophia Willis, whereby the latter agreed to convey her half of the property to the said Mella Hobson in return for future care and support of Sophia Willis during the balance of her life. The two old ladies did live together after inheriting the property jointly, but for some time before suit herein was filed they had become estranged and were living apart with no prospect of reconciliation. Under the circumstances as set forth and admitted in the counterclaim, and in view of our construction of the agreement claimed to have been made, we are of the opinion that the contract is not subject to enforcement. Mutuality of obligation and remedy does not exist under such a contract. (*Rath* v. *Degener,* 352 Ill. 135.) Sophia Willis could not

get specific performance of such contract on her part. Her sister might refuse to render the services promised. Mella Hobson might die first and the continued care to which Sophia Willis was entitled might thus be incapable of fulfillment. Also, Sophia Willis is still alive and she should not, and could not, be compelled to live with her sister during the remainder of her life, should she desire not to do so. No situation is alleged in the pleadings to show that Mella Hobson could not be adequately compensated in damages for any care given to her sister. Defendants cite the case of *Clancy* v. *Flusky,* 187 Ill. 605, as authority for the proposition that specific performance could be awarded during the lifetime of Sophia Willis. We have examined this opinion and find that while the suit asking specific performance of a contract for conveyance, in return for lifetime support of the promisor, was commenced before the latter had died, the man to be supported therein actually did die during the pendency of the trial and the court found as a fact that the person asking for relief had performed his share of the bargain and was entitled to the property. There was nothing more to be done by the plaintiff in that case after the death of the defendant therein, and it was held that the plaintiff had completely performed such services, which took the contract out of the provisions of the Statute of Frauds. In the *Clancy case* the court states the proposition of law involved there, as in this case, to be as follows: "When the alleged contract is oral and the Statute of Frauds is pleaded, there must have been such performance as will take the contract out of the prohibition of such statute; but when a contract is proved, and it is founded upon a good and valuable consideration and has been performed by one party, a court of equity will decree its specific performance at the suit of such party." In that case all of the care due the party to be supported was ended when such person died, and the person entitled to the conveyance therein had fully performed

his part of the bargain. In this case Sophia Willis is alive and the care due her, if she made such a contract, has not all been given her. Many things, in addition to the possible death of her sister, may prevent the fulfillment of the contract. The family bickerings and disagreements alleged in the pleadings show serious disagreements which would in all probability increase in intensity should the sisters live together. Under the facts alleged, the claim of Mella Hobson of full performance, and her allegation of willingness and ability to perform, does not justify granting the relief sought. A suit for specific performance based on consideration of lifetime care, is premature when brought during the lifetime of the one making the alleged promise to convey. There cannot be such full and complete performance on the part of the party furnishing the support as to take the transaction out of the provisions of the Statute of Frauds until the death of the party to be supported. The prayer of Mella Hobson for specific performance of a contract by Sophia Willis to convey to her the latter's half interest, as set forth in her counterclaim, cannot be granted.

Appellants George E. Murphy, and the law firm of Duck & McManigal, ask that their claims for personal and legal services be decreed to be liens on the real estate herein until the same are paid. It is alleged that the two old ladies were, and are, hopelessly insolvent; that they could not pay these debts and that they made the promises set forth above, that Murphy and the attorneys have a lien on the property as security for their claims. It is charged that George E. Murphy, who also claims to have the remainder interest in the property, joined in the agreement to give the lien for attorney fees. The pleadings do not specify whether the contracts for said liens claimed were oral or in writing, but the written brief and arguments of defendants definitely state that in each instance the agreement was an oral one, and the Statute of Frauds was pleaded in plaintiff's motion to strike. Defendants

concede that generally such oral agreements to establish liens on real estate are within the Statute of Frauds and therefore unenforceable, but they contend that the peculiar circumstances herein are such that they have acquired what they call equitable liens as distinct from their legal rights. Several cases are cited in their briefs in support of such proposition.

In *Oppenheimer* v. *Szulerecki*, 297 Ill. 81, relied upon by these counterclaimants, the claim for lien was for improvements made by a tenant under the provisions of a written lease by which the landlord agreed to pay for any improvements at the expiration of the term. The claim in the case of *Kukuk* v. *Martin*, 331 Ill. 602, said in the briefs herein to support the right to liens, was one for a lien on personal property for the unpaid purchase price thereof. These cases are clearly distinguishable from the case at bar and do not assist the counterclaimants in their claims.

An equitable lien is the right to have property subjected, in a court of equity, to the payment of a claim. It is neither a debt nor a right of property but a remedy for a debt. It is simply a right of a special nature over the property which constitutes a charge or encumbrance thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree, and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists. (*Aldrich* v. *Ederer Co.* 302 Ill. 391; *Kukuk* v. *Martin*, 331 Ill. 602.) Equity recognizes, in addition to the personal obligation, in some cases, a peculiar right over the thing concerning which a contract deals, which it calls a "lien," and which, though not property, is analogous to property, by means of which the plaintiff is enabled to follow the identical thing and to enforce the defendant's obligation by a remedy which operates directly upon that thing. (*Kukuk* v. *Martin*, 331

Ill. 602.) In applying this description of an equitable lien, we find that, in the case before us, the particular property upon which claims for lien are made bears no relation to the contracts for the services alleged to have been performed herein, other than the fact that, in one instance, the personal services were performed in the management of the premises involved, and that in the other instance the parties sought to be held liable acquired the real estate, on which the lien is claimed, as intestate property when the lawyers succeeded in setting aside the purported will devising the same to others.

In *Aldrich* v. *Ederer Co.* 302 Ill. 391, we held that whenever parties enter into an express executory instrument in writing indicating an intention to make some particular property, real or personal, or a fund, security for a debt or other obligation, there is created an equitable lien on the property described in such contract. The contract herein said to have been made, and sought to be enforced, was an oral one and therefore does not come within the first part of the definition set forth above, and we believe it does not comply with the requirements set forth in the balance of the description of an equitable lien, since in the instant case we do not have a debt contemplated to coincide with the promise of security or to become effective in the future. In the two pleadings before us, we find that the lien claimants say that in each instance they have been paid a part of their bills, and that the debtors agreed to give a lien for the balance due. George E. Murphy says that said Sophia Willis and Mella Hobson owed him a sum of money and that he had been paid all but one thousand dollars of the amount, and that the two women had agreed that their interests be held as security for such balance. Ernest L. Duck and Thomas A. McManigall allege that they were partly paid also and that the two women and George E. Murphy did, by express contract, agree that for such work and balance the lawyers named have a lien on

the real estate. The pleadings are very indefinite as to when the agreements relied upon were entered into, but our construction of the allegations described above is that the claimed contracts for liens were made after the obligations of the property owners had been partly paid and had become balances due. We must hold that under such circumstances these claimants never at any time acquired such an interest in the real estate as should be protected under an equitable lien as defined and applied by this court. The only contention of these appellants seems to be that their services rendered were to be additionally secured by these liens on the premises because their debtors had no money with which to pay them and desired that they be protected. These alleged oral contracts for liens, as set forth in the pleadings, are clearly within the Statute of Frauds.

It is argued that while the motions to dismiss the third amended answer pleaded a violation of the Statute of Frauds, the motions to strike the third amended counterclaim did not contain such specific objection and therefore the trial court should not have considered such question of law when testing that pleading on motion. We find that the defendants are correct in such statement as to the contents of the motions to strike the amended counterclaim but the defendants themselves raised the point of the application of the statute to their claims by specific allegations in the counterclaim. They affirmatively allege therein that the defense of the Statute of Frauds in this case would, and does, operate as a fraud upon the performing parties and they thereafter enumerate many charges of fraud to support such contention. Where the pleading itself sets forth that a defense of the Statute of Frauds should not be allowed and gives reasons in support of that claim, a motion to dismiss raises the question of the sufficiency of such allegations without the motion itself affirmatively repeating the defense.

204

The superior court of Cook county was correct in its ruling allowing the motions to strike the third amended answer and the third amended counterclaim of the defendants.

Defendants next assign numerous errors which they contend arose subsequent to the dismissal of the former appeal by this court, particularly in the proceedings before the master in chancery. Although defendants frequently reiterate these alleged errors in their briefs, no authority is cited or argument made in support of their contentions, so that this court might be justified in assuming that defendants had abandoned their contentions. We have, however, thoroughly examined the briefs and abstract before us, and in view of the defendants' failure to plead over, and of the fact that they did not appear at the hearing before the master in chancery and were defaulted, we are of the opinion that the errors assigned to this part of the proceeding are without merit.

The decree of partition entered by the superior court was correct and it is affirmed.

*Decree affirmed.*