**In re COMMERCIAL INVESTMENTS, LTD., dba Territorial Custom Homes, Employer ID No. 85–0165436, Debtor.**

**SECURITY FEDERAL SAVINGS & LOAN ASSOCIATION OF ALBUQUERQUE, a national stock association, Plaintiff,**

**v.**

**COMMERCIAL INVESTMENTS, LTD., dba Territorial Custom Homes, a New Mexico corporation, Wayne R. Crooks, James Keever, Patricia Keever, Master Mechanical, Inc., a New Mexico corporation, Western Building Supply Co., Inc., a New Mexico corporation, Lumber, Inc., Les Schumann, dba Les Schumann Construction, Wa–Co Heating & Air Cooling, Inc., a New Mexico corporation, Hopkins Concrete Contractors, Inc., a New Mexico corporation, and Harley H. Swink, trustee, Defendants.**

Bankruptcy No. 7–82–01882 M A.
Adv. No. 88–0025 M.

United States Bankruptcy Court,
D. New Mexico.

Nov. 2, 1988.

Ruth M. Schifani, Albuquerque, N.M., Thomas A. Simons, IV, Santa Fe, N.M., for plaintiff.

James C. Jacobsen, Albuquerque, N.M., for Crooks.

Kevin D. Hammar, Albuquerque, N.M., for Keever.

J. Kerwin Hollowwa, Albuquerque, N.M., for Lumber, Inc.

Janice D. Paster, Albuquerque, N.M., for Schumann.

Ernesto D. Romero, Albuquerque, N.M., for Swink.

## MEMORANDUM OPINION

MARK B. McFEELEY, Bankruptcy Judge.

This matter is before the Court on (1) plaintiff's motion for summary judgment against mechanics and materialmen, filed April 15, 1988, (2) Western Building Supply Co., Inc.'s motion for summary judgment against plaintiff, filed May 2, 1988, (3) Lumber, Inc.'s motion for summary judgment, a statement of facts and a memorandum in support of which was filed on May

2, 1988, (4) Keevers' countermotion for summary judgment, filed May 3, 1988, and (5) Les Schumann's motion for summary judgment, filed May 12, 1988.

Plaintiff moved to strike Schumann's response and cross motion for summary judgment on the ground that it was untimely filed. Schumann filed a motion for extension of time to be allowed to file his response and cross motion after the deadline previously set by the Court. Counsel for Schumann was present at the pretrial conference at which the deadlines for filing were fixed and set forth no good reason why Schumann's motion for extension of time was not filed prior to the expiration of the original deadline. While I have also dealt with the substantive issues raised by the Schumann response and cross motion, it appears to me appropriate to find that same was untimely and that no good grounds were set forth which would justify the Court in ignoring its deadlines. Therefore, the Schumann response and cross motion are appropriately stricken.

The parties to these cross-motions claim an interest in certain property in Albuquerque, New Mexico, located at 7024 La Costa Drive NE.

Plaintiff loaned the debtor-defendant in this case, Commercial Investments, Ltd. (hereinafter CIL), money to construct a house on the property described above. The debtor was the record title holder of the real property upon which the house was to be constructed, and had entered into a contract with the defendants James and Patricia Keever (hereinafter Keevers) whereby Keevers were to purchase the house once it had been constructed. The house was partially completed and then plaintiff commenced a foreclosure action in state court, against this and other properties upon which it had made loans secured by mortgages. Thereafter CIL filed a chapter 7 petition under the bankruptcy code and the foreclosure action was removed to the bankruptcy court. This court required that separate adversary proceedings be brought as against each property upon which the plaintiff claimed a note and mortgage. This adversary, among others, resulted.

The parties stipulated that plaintiff recorded a mortgage on this property on February 26, 1987, and re-recorded the mortgage on March 2, 1987, in Book MD 867A at pages 573–576 of the records of Bernalillo County, New Mexico.

### Defective Acknowledgment

We shall first deal with the argument that the mortgage is invalid because it bears a deficient acknowledgment. The acknowledgment reads as follows:

"State of New Mexico, Bernalillo County. ss

The foregoing instrument was acknowledged before me this February 25, 1987 by Wayne R. Crooks, President."

Defendants argue that the acknowledgment does not comply with Section 14–13–23, NMSA 1978 in that it does not contain the name of the corporation and the state of incorporation. Lacking this information, it is the defendants' contention that *New Mexico Properties v. Lennox Industries, Inc.*, 95 N.M. 64, 618 P.2d 1228 (1980) requires the Court to hold that the mortgage is not entitled to be recorded and thus is invalid.

The materialmen's liens in *New Mexico Properties* lacked the recitals that the acknowledging officer had appeared before the notary, that the seal affixed to the lien was the corporate seal or that the corporation has no seal and that the instrument was signed by authority of the board of directors of the corporation and acknowledged by the officer so signing to be the free act and deed of the corporation for the uses and purposes set forth therein. These recitals are required by Section 14–13–9, NMSA 1978, and are considered to have been made if the form of acknowledgment contains the words "was acknowledged". Section 14–13–21, NMSA 1978. In the cited case, neither recital was made nor was any language approximating that required found.

Plaintiff urges the Court to find that the applicable law in this case is found in *Byers*

*Brothers & Co. Livestock Comm'n Corp. v. McKenzie*, 30 N.M. 487, 239 P. 525 (1925). The *Byers* court held that since New Mexico had no statutory form of acknowledgment for a copartnership, that the form used was sufficient even though it did not recite that the acknowledging person was acknowledging the execution of the instrument as the free act and deed of the copartnership. The court concluded that substantial compliance with the form of acknowledgment was sufficient to treat it as recorded. *Accord Akamine & Sons, Ltd. v. American Security Bank*, 50 Haw. 304, 440 P.2d 262 (1968).

An examination of the mortgage in the case at bar shows the name of the corporation appearing just above the form of acknowledgment so that the only information not appearing is the state of incorporation of the acknowledging corporation. The long form of acknowledgment found in Section 14-13-9 does not, it should be noted, require the recitation of the state of incorporation in its form of corporate acknowledgment.

The Court concludes that plaintiff has substantially complied with the requirements for acknowledgment of a mortgage, that the mortgage is valid and is entitled to recording and that the plaintiff is entitled to summary judgment on that issue.

### Priority

The next issue raised in the summary judgment motions is the question of whether, assuming the mechanics' liens are valid, they are entitled to priority over the mortgage lien of the plaintiff because the architect undisputedly performed work prior to the recording of plaintiff's mortgage. No architect's lien was filed. All other materials were furnished and work performed after the filing of plaintiff's mortgage. It is clear under New Mexico law that an architect is entitled to a mechanic's lien for the furnishing of plans, even if the architect does not supervise the construction, if the plans are actually used in the construction of the building. *Gaastra, Gladding & Johnson v. Bishop's Lodge Co.*, 35 N.M. 396, 299 P. 347 (1931). Section 48-2-5 gives the holder of a lien which arises under section 48-2-2 preference over any "lien, mortgage or other encumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done or materials were commenced to be furnished; ...." Thus for the defendants to prevail, the lien of the architect must relate to the time that the plans were drawn. The court's reading of the *Gaastra* case, however, is that some physical work must commence on the designed structure in order for the architect's lien to arise. The *Gaastra* case requires that the architect's plans be actually used in the construction before the architect is entitled to a lien. Therefore, the lien cannot arise until some physical work has commenced upon the site (or until materials have been delivered thereto). That not being the case, the defendants' liens do not have priority over the mortgage of the plaintiff. The Court leaves unanswered the question of the effect of no such lien having been filed.

### Equitable Subordination

Defendants next argue that even if the mortgage of the plaintiff is superior in right to their lien positions, the court should invoke the doctrine of equitable subordination and pay their lien claims first. Based on the facts of this case, even viewed in the light most favorable to defendants, this court cannot say that the conduct of the plaintiff was such as would rise to even the lowest level required to find that it was inequitable to allow plaintiff to recover prior to the defendants from the proceeds of the property upon which the parties claim a mortgage or lien. At worst, plaintiff could be said to have failed to closely supervise the debtor-contractor's disbursal of funds from the proceeds of the loan at issue herein, and may have loaned money in excess of the percentage of completion of the residence as required by the construction loan agreement executed by plaintiff and debtor-contractor. These facts, even if proven to be true, do not establish a factual basis for the court to use the doctrine of equitable subordination.

■ To equitably subordinate one claim to another, the court must first find that the three conditions set forth in the case of *Matter of Mobile Steel Company*, 563 F.2d 692 (5th Cir.,1977) have been satisfied. *Mobile Steel* requires the court to find (1) inequitable conduct by the party whose claim is to be subordinated, (2) injury to the petitioning creditor as a result of that conduct, and (3) that subordination not be inconsistent with other provisions of the bankruptcy code.

■ Certainly there are no provisions of the bankruptcy code adversely affected in the case at bar by allowing the asked-for equitable subordination. There are no facts or allegations demonstrating the existence of any question of material fact as to whether the plaintiff has engaged in some type of inequitable conduct. The parties have identified no cases and the court has found none where the negligence of a party alone has been deemed the type of inequitable conduct necessary to apply this doctrine. Most cases seem to require intentional misconduct on the part of the party whose claim is to be subordinated. Indeed, it has been suggested that with respect to parties who are not insiders, the standard should be gross misconduct. *In Re Orah Wall Financial Corp.*, 84 B.R. 442 (Bkrtcy.W.D.Tex.1986); *In Re Minnesota Kicks, Inc.*, 48 B.R. 93 (Bkrtcy.D. Minn.1985); *Matter of Teltronics Services, Inc.*, 29 B.R. 139 (Bkrtcy.E.D.N.Y.1983); *In Re W.T. Grant Co.*, 4 B.R. 53 (Bkrtcy.S. D.N.Y.1980).

There are no facts before this court, and indeed there are no allegations of any contact between the defendants and the plaintiff prior to the date that the plaintiff stopped funding on the loan here in question. There was no representation by any defendant that they were induced to keep supplying labor or materials to the jobsite here based on a statement by the plaintiff. There is no allegation that the plaintiff had notice of any unpaid subcontractor or material supplier prior to the date it stopped funding this loan. Having failed to produce any evidence that the plaintiff engaged in inequitable conduct, summary judgment in favor of plaintiff on this issue is warranted and will be granted.

### Keever Claims

We next address the claims of James and Patricia Keever. The Keevers entered into a contract called a new construction purchase agreement with the debtor dated January 5, 1987. The contract called for the debtor to construct a house for the Keevers on the property at issue herein. The Keevers advanced the sum of $12,500, which, according to the terms of the contract, was "... to be escrowed with listing broker on behalf of the Seller(s) herein. Any deposits paid by the Purchaser(s) shall be deposited in a special trust fund to safeguard such deposit from claims of creditors of the Seller(s) and to be deposited in accordance with the terms of this contract." There was no listing broker involved in the contract and no stipulation or affidavit before the court which discloses what was done with the $12,500; suffice it to say that it does not appear to be available to the Keevers. The plaintiff was aware, at the time it agreed to loan construction funds to the debtor, of the existence of this contract.

There was also an agreement that the Keevers could live in certain property rent free while the house was under construction. The agreement is dated April 24, 1987, and there is no allegation or stipulation that plaintiff was aware of the existence of this agreement.

### Equitable Vendee's Lien

■ Based on the foregoing, Keevers claim that an equitable vendee's lien arises in their favor and that it is superior to the mortgage of the plaintiff. In *Reserve Plan, Inc. v. Peters*, 71 N.M. 25, 375 P.2d 576 (1962), the Court, quoting *Watson v. Hobson*, 401 Ill. 191, 81 N.E.2d 885, 890, 7 A.L.R.2d 1156, (1948) said

"An equitable lien is the right to have property subjected, in a court of equity, to the payment of a claim. It is neither a debt nor a right of property but a remedy for a debt. It is simply a right of a special nature over the property which constitutes a charge or encumbrance

thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree, and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists. *Aldrich v. R.J. Ederer Co.*, 302 Ill. 391, 134 N.E. 726; *Kukuk v. Martin*, 331 Ill. 602, 163 N.E. 391. Equity recognizes, in addition to the personal obligation, in some cases, a peculiar right over the thing concerning which a contract deals, which it calls a 'lien,' and which, though not property, is analogous to property, by means of which the plaintiff is enabled to follow the identical thing and to enforce the defendant's obligation by a remedy which operates directly upon that thing.

*Reserve Plan*, at 30, 375 P.2d 576.

While the Keevers might be entitled to have the court impose an equitable lien to secure the return of their earnest money deposit as a remedy to ensure the payment of a debt, the circumstances of this case are not such as would allow the court to give that lien a priority over the other encumbrances on the property.

### Breach of Duty to Third Party

 Keevers next argue that they are third party beneficiaries to the construction loan agreement between plaintiff and the debtor, such that plaintiff had a duty sounding in tort and in contract to the Keevers to ensure that the construction funds were properly and appropriately expended. The plaintiff's mere knowledge that Keevers had contracted with the debtor to purchase the house when the construction was completed did not impose any duty on plaintiff to account to Keevers for the expenditure of funds from the construction loan, to monitor the expenditure of those funds for the benefit of the Keevers, or any other duty as Keevers would have the court find. Indeed, a fair reading of the agreement between debtor and Keevers would lead plaintiff to believe that the Keevers' $12,500 earnest money was being held in trust pending completion of the project.

In *Connor, et al v. Great Western Savings and Loan Association*, 69 Cal.3d 850, 73 Cal.Rptr. 369, 447 P.2d 609 (1968), relied on by Keevers for the proposition that a financing bank can be liable for injury to buyers, is distinguishable in that in *Connor* the bank was found not only to have "received interest on its construction loans, but also substantial fees for making them, a 20 percent capital gain for 'warehousing' the land, and protection from loss of profits in the event individual home buyers sought permanent financing elsewhere." The court also found that based on the relationship of the parties that the bank "knew or should have known that the developers were inexperienced, undercapitalized, and operating on a dangerously thin capitalization. It therefore knew or should have known that damage from attempts to cut corners in construction was a risk reasonably to be foreseen." *Conner* at 616. The court also said that the bank had become an active participant in the enterprise, something that the facts and allegations here do not support, as well as finding that substantial moral blame was attributable to the bank's conduct.

There are no facts before the court, nor any allegations in the counterclaim filed by Keevers, alleging acts or conduct by which plaintiff could be found liable for injury to the Keevers, and summary judgment is therefore appropriate and will be granted in favor of plaintiff.

### Unlicensed Contractor

Plaintiff additionally argues that the liens of the mechanics and materialmen are void because the debtor was not a properly licensed contractor. The court need not decide that question at this time, since plaintiff's mortgage is found to be prior to defendants' liens and it is clear from the record in this case that the fund being held is insufficient to completely pay plaintiff's claim.

Having granted summary judgment to plaintiff on all issues, defendants' cross motions for summary judgment will be denied.

This memorandum constitutes the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.