## BANK OF AMERICA NAT. TRUST & SAV. ASS'N v. ERICKSON.

### No. 9587.

Circuit Court of Appeals, Ninth Circuit.

Feb. 14, 1941.

---

Louis Ferrari, of San Francisco, Cal., and Edmund Nelson and G. L. Berrey, both of Los Angeles, Cal., for appellant.

Joseph J. Rifkind, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The appeal is from an order in bankruptcy subordinating claims presented by appellant to those of all other creditors of the bankrupt.

The bankrupt corporation was engaged in the business of drilling for petroleum. McComb and Hickerson were two of its incorporators, the third being Hitt. Of a total of some 297,000 shares outstanding McComb owned 72,800 shares, Hickerson 51,666 shares individually or as joint tenant with his wife, and Hitt, 3,350 shares. McComb was president, Hickerson vice-president of the company.

The corporation incurred heavy indebtedness in drilling during 1938, and some of its creditors appear to have been threatening legal proceedings. In September of that year the company sent out a letter to those to whom it owed money stating that the ten largest creditors had been invited to meet with the company officers, at which meeting measures would be decided upon for the protection of all. Another letter invited the larger creditors to attend. At the meeting a committee was appointed and an agreement drafted denominated "Creditors' Agreement". The prime purpose of the agreement, as evidenced by the recitals, was to obtain time in which the debtor might reorganize or refinance itself, thus possibly enabling it to carry on the development of its wells and to liquidate its debts in an orderly way. Clause one reads in part: "The creditors signing this agreement agree for a period of 90 days from and after the date hereof and for such further period as creditors' committee may grant, not to take any legal action to enforce payment of their claims." Clause seven—the provision which

forms the basis of the order below—reads as follows:

"Seventh: S. W. McComb, R. E. Hickerson and R. E. Hitt agree to and do hereby defer and subordinate any and all claims which they may have jointly or severally against the debtor, including any claims for money loaned or salary due, until all other claims of the debtor including interest accrued and to accrue thereon, have been fully paid, satisfied and discharged, whether through reorganization, refinancing, sale, assignment for the benefit of creditors, bankruptcy, debtor proceedings or any other means, whether voluntary or involuntary."

After the agreement had been prepared it was presented to McComb, Hickerson and Hitt and signed by them. It was then returned to the creditors' committee for their signatures. Afterwards McComb caused counterparts of the agreement to be mailed to the various creditors of the company for their execution. There were approximately 65 creditors of whom about 40 executed the agreement. It appears that the remaining creditors, although not signing, acquiesced in the arrangement to the extent that they took no legal action during the prescribed 90-day period or for 25 days thereafter. The bankruptcy proceeding then ensued.

McComb and Hickerson were creditors of the corporation. Hitt was a creditor in an unimportant amount. The claim of McComb is for a sum in excess of $31,000 based upon a note, advances, and salary. The indebtedness to Hickerson is based in part on a note of the corporation and in part on salary account, the total being about $14,000. The whole of the indebtedness to these men was subsisting at the time of their execution of the agreement. The claims of Hickerson and McComb were assigned to appellant bank which presented them as claims against the bankrupt estate. The trustee objected to their being allowed on a parity with those of other general creditors, upon the ground that the claims were subordinated to all other claims by the terms of the creditors' agreement. The referee held with the trustee and ordered the claims subordinated. A petition to review the referee's order was denied and this appeal followed.

Appellant contends, in the first place, that a justiciable controversy growing out of the agreement to subordinate exists between it and the other creditors; that the bankruptcy court is without jurisdiction to determine the dispute; that the McComb and Hickerson claims should be allowed without prejudice and the creditors relegated to another forum for the adjudication of the controversy.

The argument finds little support in the authorities. The bankruptcy court has undoubted power to subordinate a general claim to other claims in the same category where for any reason, legal or equitable, it ought to be subordinated. The court may administer the estate and order its distribution conformably to the rights of creditors as fixed by their own contracts, if these are lawful. Bird & Sons Sales Corporation v. Tobin, 8 Cir., 78 F.2d 371, 100 A.L.R. 654; In re Geo. P. Schnizel & Son, Inc., D.C., 16 F.2d 289; In re Aktiebolaget Kreuger & Toll, 2 Cir., 96 F.2d 768; Searle v. Mechanics' Loan & Trust Co., 9 Cir., 249 F. 942; St. Louis Union Trust Co. v. Champion Shoe Machinery Co., 8 Cir., 109 F.2d 313. Appellant cites In re Railroad Supply Co., 7 Cir., 78 F.2d 530, as supporting its contention. There the court declined to defer distribution pending disposition of a dispute between two creditors whose controversy was of no concern to other creditors or to the estate. The Circuit Court of Appeals affirmed, believing the course discretionary and holding that the discretion had not been abused. The decision obviously does not support appellant. The present agreement affects all creditors, and a determination in bankruptcy of the rights fixed by it is essential to an orderly administration of the estate.

Turning to the merits of the controversy, appellant argues that the agreement to subordinate never became effective for the reasons: (1) some of the persons named as parties in the introductory paragraph did not sign, (2) the agreement was contingent on a waiver of its claim by Brix Estate Company, and that creditor did not waive, and (3) consideration for the agreement failed because of the facts just stated or was absent for the reason that the duration of the forbearance was wholly in the control of the creditors.

For a proper understanding of the argument in these respects we quote the pertinent clauses of the agreement. The introductory paragraph reads: "This agreement made and entered into * * * by and between Magnet Oil Company, a corporation, hereinafter referred to as debtor; B. R. Cleeland, T. H. Stokes and D. W. Pickard, hereinafter referred to as creditors' committee; and [naming seven cred-

itors] and all others who may become parties hereto by the execution of this agreement. * * *"

Four of the seven creditors named in this paragraph as parties signed the agreement. Three did not.

Clause first has already been quoted. Clauses eighth and ninth are as follows:

"Eighth: The Brix Estate Corporation agrees to and does hereby waive, release and relinquish all claims against the debtor, including that certain note or notes in the sum of $35,000.00"

"Ninth: The creditors executing this agreement agree to use their best efforts and endeavors in securing all other creditors of the debtor to join in and become parties to this agreement but the provisions of this agreement *shall be binding upon all parties executing the same irrespective of the execution thereof by any other party or parties.*" (Italics supplied.)

■ There is no ambiguity in all this. Words could hardly be plainer. The agreement was made binding upon "all parties" who signed or who became parties by signing, whether or not executed "by any other party or parties". McComb and Hickerson signed and thus bound themselves both to subordinate their claims and to forbear suit. Brix Estate Company did not sign nor waive its claim. But the agreement to subordinate was not conditioned on such waiver or upon execution by any other party or creditor. The contract is replete with recognition of the probability that some of those concerned might decline to accept it, but it was nevertheless made binding upon all who indicated acceptance by attaching their signatures. We need not speculate upon the reasons prompting the subordination or attempt to evaluate the quid pro quo. Enough to observe that the corporate officers secured for their company the period of grace desired.

Clause tenth provides: "Tenth: In the event any proceedings are filed under the bankruptcy act by any creditors not parties hereto or by the debtor itself or should any creditor not a party to this agreement levy an execution upon the property of the debtor which shall not be vacated upon the demand or through the efforts of the creditors' committee or should the debtor fail to comply with any of the terms thereof or should any other condition arise which in the opinion of the creditors' committee will result in any unfair advantage being obtained by any creditor over remaining creditors or should any condition arise in the debtor's affairs during the extension herein which in the opinion of the committee makes it inadvisable for the creditors to defer action, then and in the instances in this paragraph Tenth, upon unanimous action of the committee the extension herein granted may be sooner terminated."

■■ This clause did not place the duration of the forbearance in control of the creditors. That power, to be exercised in a reasoned discretion, was vested in a committee of three who were not themselves creditors. The validity of a contract is not impaired where the discretion to terminate is lodged by common consent in an independent third party. Williston on Contracts, § 47.

■ Finally, it is argued that Hickerson and McComb subordinated only to debts existing at the time of the agreement, not to those later contracted. It does not appear that any unsatisfied debts were incurred subsequent to the agreement. But assuming there are such, the contract contemplated the carrying on of the business under the eye of the creditors' committee and authorized the incurring of debts for certain purposes. The agreement of the two officers was to subordinate until all other obligations of the debtor, "including interest accrued and to accrue thereon, have been fully paid, satisfied and discharged whether through bankruptcy * * * or other means * * *". The arrangement was to continue for a specific period; and a fair construction of the language and purpose of the contract obliges us to conclude that the claims were subordinated to all legitimate debts of the corporation, whether present or prospective.

Affirmed.