In the Matter of **HARVEST MILLING COMPANY, Bankrupt.**

No. B–47145.

United States District Court
D. Oregon.

Sept. 27, 1963.

Bert S. Gooding, Portland, Or., for claimant.

David R. Williams, Portand, Or., for trustee.

EAST, District Judge.

Concentrates, Inc., a cooperative association organized under the laws of the State of Oregon (Concentrates), holds an open account claim against the bankrupt for the purchase of poultry

feed products in the amount of $34,-365.49, the propriety and legality of which is not contested. However, the trustee did ask and obtain from the Referee on June 28, 1963, and following a hearing, this order:

"2. $7,850.59 of claimant's claim hereby is subordinated to the claims of general unsecured creditors herein, and since the dividend to such creditors will be less than 100 per cent, claim no. 26 filed herein by Concentrates, Inc. is hereby allowed in the sum of $26,514.90.

"3. At the time of final distribution in this estate, the Trustee shall surrender unto Concentrates, Inc. all his right, title and interest in and to claimant's obligations and shares, together with the accumulations thereon as are described in paragraph 2b, 2c and 2d of the findings herein."

Concentrates is aggrieved by that order and seeks this review thereof.

It seems "the bankrupt was the registered or beneficial owner" at the date of adjudication herein "of the following obligations and/or shares in * * *" Concentrates:

"a. One share of common capital stock—par value $500.00.

"b. Thirty-five shares class B preferred stock—par value $3,-500.00.

"c. Thirty-seven shares capital certificates—par value $3,700.00.

"d. Accumulations on b. and c. above —$650.59."

The Referee in his findings recites:

"3. That item 2a is a common stock certificate in claimant corporation, a partially cooperative corporation, for which the bankrupt or its predecessor in interest paid the sum of $500.00 in cash.

"4. That class B preferred stock and capital certificates both represent a refund of overcharges or a distribution of profit to members of the claimant cooperative corporation based on the profit realized from purchases by such members. Without this return of profit, claimant could not maintain its status as a partially nonprofit cooperative corporation.

"6. That although the class B preferred stock and capital certificates might have a sale value, claimant corporation has restricted the right of transfer by providing in both issues that 'transfer thereof may be withheld pending payment of indebtedness due the association from the holder.'

"9. (Concentrates) has refused to purchase or otherwise acquire the stock and certificates held by the trustee, and (Concentrates') Secretary-Treasurer has testified that 'under the (Concentrates') by-laws' —which are not in evidence, the corporation (Concentrates) could not voluntarily make such purchase since there was a prescribed order of redemption that would prohibit redemption of these issues until all or a substantial amount of class A preferred stock had first been redeemed."

The Referee concludes:

"1. The Bankruptcy Court is a Court of equity and under its equitable powers may subordinate a particular claim to the claims of other creditors to reach a fair and just result."

And, further, that since Concentrates has a contractual right to defer or to set off its obligations under the mentioned "obligations and/or shares" to the extent of mutual indebtedness to it—"It is only equitable that a corresponding right of set off be available to the Trustee * * and a reduction of claimant's claim in the amount of $7,850.59 would be equitable * * *" because the trustee estimates 40% dividend to unsecured creditors in these proceedings.

The Referee states in his certificate that he "believes that his ruling has achieved an equitable result for both

sides." And this may well be so, but he has, by the same token, turned his back upon, or at least recast, the bona fide contracts of the parties, which neither he nor this Court can do. Many contracts in their legal enforcement may seem harsh and unfair, but "ours is to do \* \* \* and not to reason why." For, as stated in Bank of America, *anti*, the bankruptcy court "(must) administer the estate and order its distribution conformable to the rights of the creditors as fixed by their own contracts, if these are lawful."

True it is that:

"Where good equitable grounds or reasons appear why certain creditors should not share in the assets to the detriment of others, the Bankruptcy Court has power to, and should, subordinate the claims of the former to those of their innocent fellow creditors, even though, as a result, holders of the subordinated claims will receive nothing out of the estate.

"In adjusting the equities of creditors the general principles of equity jurisprudence, rather than state law, are controlling." Remington on Bankruptcy, § 2874, Vol. 6, p. 488;

and

"The bankruptcy court has undoubted power to subordinate a general claim to other claims in the same category where for any reason, legal or equitable, it ought to be subordinated." Bank of America Nat. Trust & Sav. Ass'n v. Erickson, 117 F.2d 796, 798 (9th Cir., 1941).

This equitable rule has in its genesis and thrust the good conscience of the Referee to avoid or thwart the operative effect of mal-fide, albeit legal, contracts because of inequitable conduct on the part of a creditor to the detriment of others who are innocent or would be victimized. Inequitable conduct is that conduct which may be lawful, yet shocks one's good conscience. It means, *inter alia*, a secret or open fraud; lack of faith or guardianship by a fiduciary; an

unjust enrichment, not enrichment by bon chance, astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close, or double dealing or foul conduct.

The late Judge McColloch said, In the Matter of Lumber Incorporated, 124 F. Supp. 302, 308–309:

"\* \* \* there is a line of decisions which holds that the court under its general equitable powers may subordinate claims of certain creditors to those of others where the fraudulent or inequitable conduct of such claimants demands it."

There Judge McColloch, in searching suggested areas of misconduct, overreaching or other inequitable action on the part of the creditor in dealing with the bankrupt, found

"\* \* \* nothing in the facts before (them) to warrant the exercise of the court's *unusual equitable powers* \* \* \*." [Emphasis supplied.]

to subordinate the negotiated claim of one Bradley when an officer and stockholder of the bankrupt.

The Referee's certificate on review, his findings, and the entire record before this Court is silent and lacking in any assertion, suggestion, or inference that the issuance of the foregoing "obligations and/or shares in \* \* \*" Concentrates under their respective terms and conditions were other than bona fide, open and fair contractual relationships between Concentrates and the bankrupt, a member purchaser, in the ordinary course of the plan and business of the cooperative, and in full conformity with the laws of the State of Oregon.

The contractual set off of mutual claims between a bankrupt and a creditor as involved and accomplished here might well constitute a preference, but not "fraudulent or inequitable conduct of \* \* \*" a creditor to the detriment of other creditors. Paraphrasing the language of Judge McColloch, there are no facts before us to warrant an equita-

ble subordination of Concentrates' claim in any amount by reason of its outstanding "obligations and/or shares" held by the trustee, and the Referee's order aforesaid should be set aside and vacated, and Concentrates' Claim No. 26 resubmitted to the Referee for his appropriate action in accordance herewith and the "claimant's obligations and shares, together with the accumulations thereon as described in paragraphs 2b, 2c and 2d of the findings herein" retained by the trustee as assets of his bankrupt estate.

It is so ordered.