**In re ORAH WALL FINANCIAL CORPORATION, Debtor.**

**JORDAN AND NOBLES CONSTRUCTION COMPANY OF EL PASO, Plaintiff,**

v.

**ORAH WALL FINANCIAL CORPORATION, and Commonwealth Mortgage Corporation, Defendant.**

**Bankruptcy Nos. 5–86–00502, 5–86–0111–H.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

Dec. 15, 1986.

Patrick Autry, San Antonio, Tex., for debtors.

Leslie Luttrell, El Paso, Tex., for Jordan and Nobles.

Rebecca Leigh, Houston, Tex., for Com. Mortgage Corp.

## MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

This adversary proceeding involves two distinct and unrelated issues: equitable subordination and a mechanic's lien. The plaintiff, Jordan & Nobles—El Paso, Inc., was the general contractor for a building known as Medical Point Imaging Center.[1] Defendant, Commonwealth Mortgage Company was the construction lender. The Debtor has long since disappeared from the cast for the automatic stay was lifted, because it could not offer adequate protection.

The jurisdiction of the Court arises under 28 U.S.C. § 1334; although this is a related proceeding under 28 U.S.C. § 157(b)(3),[2] the parties have consented to entry of a final judgment by this Court. 28 U.S.C. § 157(c)(2).

## I. EQUITABLE SUBORDINATION

Jordan & Nobles alleges that the deed of trust lien of Commonwealth should be equitably subordinated to approximately $27,000.00 of the claims asserted by Jordan & Nobles as general contractor. The facts are not seriously disputed. The original bid on this project was approximately $660,000.00 and a loan in that amount was funded. During the course of construction, change orders of approximately $110,000.00 were entered. As draw requests were processed, Commonwealth never objected to these change orders, but paid the draws as presented. While there had been an assignment of the construction contract between Debtor and Commonwealth, and while that document required written consent to change orders, all of the parties ignored that language.

Jordan & Nobles became worried about the ability of Debtor to complete the project. On January 9, 1986, Jordan & Nobles contacted Commonwealth by telephone about their concerns. At that time, a draw request was pending (request no. 5). Jordan & Nobles alleged that Commonwealth led them to believe that future work would be funded. Jordan & Nobles performed work worth about $27,000.00 after that date and in reliance upon Commonwealth's promise to pay.[3]

After considering the testimony of the witnesses, the factual circumstances of the January 9, 1986, telephone call seems clear. Jordan & Nobles, in that call, merely wanted to be sure that future payments would be made jointly or directly—*i.e.*, a

---

1. The building was built to house a magnetic imaging unit. The unit is an electromagnet used to create images of interior bodily functions, not unlike traditional x-rays, but without radiation. The building was also designed to house more traditional x-ray-type medical apparatus.

2. This must be related, since the Debtor has no interest in the case. This matter only involves relative priorities between two creditors. Whatever the result, the amount of debt owed by Debtor is not changed; the unsecured claims of the prevailing party will be reduced; the unsecured claims of the losing party will be correspondingly increased. Even the broadest reading of 28 U.S.C. § 157(b)(2), particularly at sub-

section (*o*), does not make such an action a core proceeding.

3. Jordan & Nobles attempts to buttress its facts concerning reliance by reference to a letter loan commitment executed by Commonwealth and a separate assignment of the construction contract to the lender. Neither document makes representation about actual payment for work in excess of the loan. The commitment letter is simply that—a loan commitment. The assignment allows, but does not require, Commonwealth to assume the construction contract if Debtor were to default on the loan. The Debtor was not in default and there had been no assumption as to the period for which subordination is sought.

check from Commonwealth for approved draws would be made payable to either the contractor or jointly to the contractor and Debtor. This would have prevented the Debtor from diverting such payments.

There are no facts indicating: 1) that Commonwealth agreed to increase the loan to cover the costs of approved change orders; or 2) that Commonwealth ever promised to pay the contractor for work if it would stay on the job.

The plaintiff, Jordan & Nobles, has failed to meet its burden of proof on the equitable subordination issue. While 11 U.S.C. § 510(c) does permit this Court to subordinate claims on equitable grounds, the burden of proof to show the elements for equitable subordination is clearly on Jordan & Nobles. *In re Missionary Baptist Foundation, Inc.,* 48 B.R. 885, 887–88 (Bankr.N.D.Tex.1985).

The burden on Jordan & Nobles is first to show that Commonwealth engaged "in some type of inequitable conduct." *In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir.1977). That term is defined to mean lawful conduct which "shocks one's good conscience." *See In re Harvest Milling Co.,* 221 F.Supp. 836, 838 (D.Or.1963).

In this adversary, Jordan & Nobles tried to show that it was misled into doing work after the January 9, 1986 telephone conference. It also showed some evidence of possibly unjust enrichment to the Commonwealth (increase in building value due to that work). The evidence is not sufficient. All that the creditor did was promise joint checks—it did not deliberately mislead by making or suggesting a guarantee of payment. Although Jordan & Nobles need not show that defendant was a fiduciary, *In re Ambassador Riverside Inv. Gp.,* 62 B.R. 147, 153 (Bankr.M.D.La., 1986), the movant must show that it was intentionally misled to its detriment. *Id.*

Also, the Court would note that, where the party whose claim is to be subordinated is not an insider [ (see 11 U.S.C. § 101(30) ], many courts require a finding not of "mere" misconduct but of "gross" misconduct. *See In re Minnesota Kicks, Inc.,* 48 B.R. 93, 12 C.B.C.2d 821 (Bankr.D.Minn.

1985). Here, there is clearly a non-insider defendant, there has been no showing of *gross abuse* of Jordan & Nobles by the defendant. In the context of this case, a showing that Jordan & Nobles had been promised payment if they continued on the job, irrespective of the loan balance, and irrespective of the Debtor's financial condition, would suffice. Those facts are not present.

Since the first test set forth in *Mobile Steel* is not met, the second issue, unjust enrichment (value added to the building) will not be considered, plaintiff having failed to cross the threshold. *See In re Mobile Steel Co.,* 563 F.2d at 700. *See also In re Ambassador Riverside Inv. Gp.,* 62 B.R. at 154.

## II. MECHANICS LIEN AND REMOVABLES

On February 25, 1986, Jordan & Nobles filed a mechanics lien. While Commonwealth alleges that the lien affidavit does not comply with § 53.054, *Texas Property Code,* there are no other objections to the validity of the lien.

The affidavit filed reads: "General Contractor Responsibilities for Imaging Center, San Antonio, Texas." This would seem to meet the "substantial compliance test" used by Texas courts. *See James Mechanical Contractors Inc. v. Tate,* 647 S.W.2d 347, 349 (Tex.App.—Corpus Christi, 1982, no writ hist.).

While the Court recognizes that the Dallas Court of Appeals found a description of "labor and materials" which read "5–12'2″ × 14'1″ O.H.ST.d M.G. $3,328.00" to be deceptive, the reasoning of that case would not control. *Haden Co., Inc. v. Mixers, Inc.,* 667 S.W.2d 316, 317 (Tex.App.—Dallas 1984, no writ hist.). That case turned upon the description of materials. This case turns upon the description of labor. It is difficult to see what elaboration of "General Contractor Responsibilities" is necessary in order to meet the statutory requirement of a "general statement." A general contractor is a general contractor

is a general contractor (my apologies to Gertrude Stein).

Therefore, as a matter of fact and law, the mechanic's lien of Jordan & Nobles is valid.

## III. REMOVABLES

Jordan & Nobles has not been shy about asserting this issue ("if it's not nailed down ..."). However, the question of removability is a question of both fact and law. In order to determine removability, it is necessary to determine whether the improvements to be removed will be injured; whether the freehold (land) will be injured; and, whether pre-existing improvements will be injured. Injury alone is not sufficient, however, since the test is a legal one of "material" injury. *See, First National Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 269 (Tex.1974).

Here, there is no threat of injury to the land or pre-existing improvements. This leaves the issue of material injury to the removable items. Resolution requires first a legal and then a factual determination. "Materiality" has some legal import before the actuality of "removableness" is to be considered.

The Texas Supreme Court recently considered the legal issue in *Exchange Savings & Loan Ass'n. v. Monocrete Pty. Ltd.*, 629 S.W.2d 34, 36–37 (Tex.1982):

The Court [the Court of Appeals in the opinion below] understood the third requirement of the *Whirlpool* test to prohibit "spiteful" removal. The Court reasoned material injury to the improvements themselves could be translated into "economic benefit" to the materialman. Determination of "economic benefit" is an unnecessary addition to and not a part of the material injury test. A materialman, for example, under proper circumstances may very well have the right to remove a unique, specially designed sign installed on a building. This is so even though the materialman may, after removal, derive no economic benefit from use of the sign. Furthermore, foreclosure of a mechanic's and materialman's lien is a sheriff's sale. Value of the materials to the materialman is irrelevant because in a public sale the value of the materials to cash bidder may differ. The test simply requires inquiry into whether the [materials] would be materially injured in the removal process.

Fortunately, this is dicta, for it seems to miss the point. Earlier in the opinion the Texas Supreme Court had determined that removal of roofing tiles would, as a *matter of law,* cause a material injury. The Court had noted that there was a factual dispute as to injury but the holding was based upon the following:

At the time the roofing tiles were furnished and affixed to the roof, the townhouses were of such a nature as to give notice.... that the roofing tiles could not be separated from the basic structure without material injury and had become a part thereof.

*Id.* at 37. However, the actual risk of damage to the structure was probably slight.

The reasoning of the Supreme Court on the issue of damage to pre-existing improvements, made not as a matter of fact but as a matter of law, is not clear.

The alleged possible injury to the underlying improvements was not a major consideration. See discussion, *id.* at 36. This legal test based upon facts, of course, then cannot be seen to support the dicta in the opinion. *See id.* at 37.

The legal test the Court seems to announce is that, if an item is removable it is also "separable" from the basic structure. *Id.* That is to say, it is not an "integral part of the basic structure...." *Id.*

Irrespective, then, of the dicta concerning "spite" removals, this is a legal issue resolved by factual economic considerations. The roofing tiles in *Monocrete* were obviously removable. The damage to the structure was slight. But the tiles were part of—not "separable" from—the structure and thus were not legally removable. The "why" seems answered "because"— because mechanics cannot be permitted to dismantel structures piecemeal. The economic consequences are too great. Even if

roofing tiles are "removable" as a factual matter, to allow legal removal would (probably) do little to protect the mechanic and would (obviously) do great economic injury to the structure.

The opinion's dicta about "spite" removals then begins to make sense. If an item is somehow separable (*i.e.*, removal does little or no injury to the value of the underlying structure nor the item removed), then the actual benefit to the mechanic is irrelevant. Conversely, where removal causes little physical damage to the structure or removed item, even if the benefit to the mechanic is significant, but results in great *economic* injury to the structure, the item is not separable (or removable) as a matter of law.

A. The "*Monocrete* Incorporation Test".

█ *Monocrete* does little, however, to set forth and define the legal issue, "separability". Clearly, the way to determine "separability" is to look first to facts. Then, if the facts show that the materials are "of such a nature as to give notice ... that they [can] not be separated ... and [have] become a part ..." of the structure, the items become non-removable as a matter of law. This distinguishes *factual* removability from *legal* removability. This is the "*Monocrete* Incorporation Test."

B. The "Threshold Material Injury Test".

Of course, the "*Monocrete* Incorporation Test" is never necessary unless the mechanic can show that (1) removal will not damage the freehold; (2) removal will not damage improvements which cannot be removed (*e.g.*, the basic structure, in most cases), and that removal will not damage the items to be removed. *See First Nat'l. Bank v. Whirlpool Corp.*, 517 S.W.2d at 269.

C. Standards for the "*Monocrete* Incorporation Test".

This Court would suggest that there are five questions which can be used in most cases to define "incorporation":

1. Is the item merely attached to the structure in such a manner that it is obvious that removal and/or replacement is always possible?

2. Is the item one which is removed and/or replaced as part of ordinary maintenance?

3. Is the item one which is removed and/or replaced as part of the ordinary operation of the building?

4. Is removal, while not usual, or even usually contemplated, so simple and so non-destructive of item, structure or freehold, that to deny removability (or separateness) would violate the purpose of the mechanic's lien statutes? *See First Nat'l Bank v. Whirlpool, Inc.*, 517 S.W.2d at 269.

5. Is the item, though easily removable, such a part of the finished structure that no party would ever contemplate removal and/or replacement during the ordinary operation and maintenance of the building? [4]

D. Applying the tests to this case.

Jordan and Nobles have alleged that virtually every item in this building except the roof, walls and floor is removable. Looking at the specific items, the Court finds as follows:

1. Air-conditioning, heating and mechanical systems:

Obviously, the pumps, compressors, fans and the like are separable. Removal does not violate the "Material Injury Test." The items are merely attached; removal is so simple that the public policy of the mechanic's lien statute should be accepted. Thus, the "*Monocrete* Incorporation Test" is not violated. However, the removal of the duct work would violate the "Incorporation Test." It is such a part of the finished structure that no one would contemplate removal.

2. Plumbing System.

The toilets, wash basins and urinals, like the items mentioned above, may be removed, the "Material Injury" and "Incorporation Test" being satisfied. That such items are sealed to the floors and walls

---

4. This question would seem to fit *Monocrete,*

629 S.W.2d 34.

does not indicate that they have been cemented in place. The minor damage of removal is just that—minor damage.

The piping (P.V.C. or copper) is not removable. Under either the "Material Injury" or "Incorporation" tests, such items cannot be removed. Damage to the structure prohibits removal.

3. Sheet Rock,[5] Doors, Windows and Door Frames.

Sheet rock is obviously not removable under either the threshold "Material Injury Test" or the *Monocrete* test. To say that sheet rock would suffer material injury on removal is probably an understatement. Further, as *Monocrete* held, installation of this type of material is "incorporation". No one would contemplate removal.

However, where interior doors, interior windows, and metal door frames are involved, removal will, first, cause no injury. Further, all of these items, the testimony showed, are very easy to remove. Finally, such items are frequently removed, replaced, or simply moved in modern commercial buildings.

Removal of exterior doors is a close question. Because the doors are so easy to remove, it is difficult to find "incorporation" (*Monocrete*). Injury to the structure exists (exposure to the elements), but removal of any item may result in this problem. However, *Monocrete*, 629 S.W. 2d at 37, looked not at this type injury but whether the item was "integral." *Monocrete* would apparently have allowed this type injury. Since these doors are not "integral," the Court finds either test allows removal.

4. Electrical System.

The light fixtures, wall switches and plugs, electrical cover plates, and electrical control panels are all clearly removable. Such items are neither incorporated nor does removal cause injury. They are frequently replaced, removed, and so forth in ordinary maintenance. *See also Parkdale State Bank v. McCord*, 428 S.W.2d 121 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.).

Electrical conduit, wiring, and junction or wall boxes are different. They are "incorporated" since these items are almost never removed in ordinary operation. Even if simple to remove, removal violates *Monocrete*.

5. Building Hardware and Cabinets.

Door latches, air-conditioning grills or registers, bathroom hardware and wooden cabinets are likewise removable. Even if not ordinarily removed, such items are so simple to take out without injury that the *Monocrete* and material injury tests do not affect the rights of the mechanic. This is true even though a spite removal will occur, for the Court presumes that cost of removal will result in little or no benefit to Jordan & Nobles. The Defendant showed that removal of the cabinets might cause some minor damage to wall paper. Such is not "material injury".

6. Electromagnetic Insulation and Glass Brick Interior Wall.

Conversely, the Court holds that removal of the electromagnetic insulation surrounding the imaging magnet is not removable. Jordan & Nobles can remove this material by taking out a removable portion of an exterior wall, moving the electromagnet, and taking out the insulation (obviously a spite removal). Such would clearly violate the *Monocrete* test. This is wholly incorporated. No one would contemplate removability following installation during the life of the building.

As to the glass brick wall, it is part of an interior wall. With this item, removal would violate the threshold test of material injury to the item and the "*Monocrete* Incorporation Test".

7. Suspended Ceiling.

The most difficult issue is the removability of the suspended ceiling (grid, accoustical panels, insulation). It can be removed, of that there is no doubt. Removal will not cause material injury to structure or freehold. Removal is clearly spiteful, but that is immaterial (cost of removal will almost

---

**5.** Some of the sheet rock is valuable for it is    lined with lead foil.

certainly consume most of the potential recovery).

First, based upon the testimony, it does not appear that material injury to the item will result. Breakage to tiles, damage to insulation, and damage to grids will be slight.

Under *Monocrete*, the removal is not, however, so simple that the public policy of the statute suggests allowing the removal. Panels are ordinarily replacement items, but not the whole system. To remove and to replace is not part of ordinary operation.

This leaves the Court to balance "incorporation" versus "non-incorporation." While this item is simply attached, and the removal easy as well as possible, a ceiling is much like a roof. The Court concludes that those items, are integral parts of the structure; the last test outweighs the others. *See, Monocrete*, 629 S.W.2d at 37.

### IV. ATTORNEYS' FEES

▪ Jordan & Nobles have pled for attorneys' fees, but attorneys' fees under § 53.236 of the *Texas Property Code Annotated* (1984) are not allowed. Six months had not passed when this action was filed.

In the alternative, Jordan & Nobles assert that the bond ordered by this Court creates a right under § 53.209, *Texas Property Code Annotated* (1984). However, this Court ordered a bond under 11 U.S.C. § 105. The Court had lifted the stay against the Debtor under 11 U.S.C. § 362 while this action was pending. Jordan & Nobles sought injunctive relief to prevent foreclosure. A bond was posted, and foreclosure was permitted. The bond did serve the purpose of a bond under § 53.171, *Texas Property Code Annotated* (1984). The bond under § 53.171 allows a party subject to a mechanic's lien to "bond around" the lien in order to sell the property, with all claims to be recovered from the bond.

Still, the Court's order was issued under 11 U.S.C. § 105, and it did not incorporate a reference to § 53.171 nor require compliance with § 53.171 *et seq*. The Court

therefore declines to allow recovery of attorneys' fees.

Defendant has also pled form attorneys' fees but there is no basis for such an award.

### V. CONCLUSION

The Court rejects the action for equitable subordination and allows the mechanic's lien removability claims as set out above. Since recovery is to be against a bond, the Court must take evidence of values in a separate hearing unless the parties agree to stipulate to allowable amounts. The actual recovery of Jordan & Nobles is, therefore, reserved.